## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No.    3:24-cv-03025-CRL-EIL ) 3:24-cv-03238-CRL-EIL ) |
| TRANSITIONS OF WESTERN ILLINOIS, INC., LACEY EATON, ERIC KAMINSKY and JANE DOE, as Plenary Guardian for The person and Estate of JOHN DOE, disabled adult, | ) ) ) ) ) ) |
| Defendants. | ) |

### PLAINTIFF SELECTIVE INSURANCE COMPANY OF AMERICA'S
### MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST DEFENDANTS

NOW COMES Plaintiff, SELECTIVE INSURANCE COMPANY OF AMERICA ("Selective"), by and through its attorneys, COLLEEN A. BEVERLY and CLAUSEN MILLER P.C., and for its Motion for Judgment on the Pleadings against Defendants Transitions of Western Illinois, Inc. ("TWI"), Lacey Eaton ("Eaton"), and Eric Kaminsky ("Kaminsky") (collectively the "TWI Defendants") states as follows:

### I.      Introduction

This is an insurance coverage declaratory judgment action brought pursuant to 28 U.S.C. § 2201. In the Complaint for Declaratory Judgment, Selective seeks a declaration that it does not have a duty to defend or indemnify the TWI Defendants with respect to the lawsuit captioned *Doe v. Transitions of Western Illinois, Inc.*, *et al.*, Case No. 2023 LA 45 pending in the Circuit Court for the Eight Judicial Circuit, Adams County, Illinois (the "Underlying Action"). The dispositive issue raised in the pleadings is an issue of law; specifically, whether the allegations made against

11397258.2

Defendants in the Underlying Action potentially fall within Selective's liability insurance policy issued to TWI, giving rise to a duty to defend and/or indemnify the TWI Defendants.

## II.   Factual Background

### A.   The Underlying Action

On or about October 24, 2023, certain underlying plaintiffs (the "Underlying Plaintiffs") filed the Underlying Action for damages against the TWI Defendants. The Underlying Plaintiffs filed a first amended complaint on or about June 21, 2024 (the "FAC"). A true and correct copy of the FAC is attached hereto as **Exhibit A**.

The Underlying Plaintiffs allege that on or about 2003, Co-Guardians John Doe II and Jane Doe entered into a guardianship for John Doe, as John Doe is of limited IQ and lacks the ability to consent.  Ex. A, ¶9.  John Doe has lived at TWI since 2005.  *Id*. at ¶10.  Defendants Eaton and Kaminsky were at all relevant times employed by TWI as the Director of Intellectual/Developmental Disabilities Services and case manager and/or program manager, respectively. *Id*. at ¶6.

On or about 2018, Golden "Fritz" Marlow, III moved into TWI's Community Integrated Living Arrangement ("CILA") facility located at 3315 St. Anthony Road, Quincy, Illinois.  *Id*. at ¶11. The Underlying Plaintiffs allege that in or around June 2019, in violation of "house rules", Fritz entered the facility bathroom and penetrated John Doe's anus with his finger while John Doe was drying off after a shower.  *Id.* at ¶12.  Further, Underlying Plaintiffs allege that on or around June 2019, Fritz grabbed John Doe's penis area while on the facility bus and hit him in the back. *Id*. at ¶14.  In addition, Defendant Doe allege that on August 13, 2022, Fritz walked into John Doe's room at the facility while John Doe was unclothed after his shower and grabbed and twisted John Doe's penis.  *Id*. at ¶15.

2

The FAC alleges that the TWI Defendants failed to ensure the health and safety of John Doe at the CILA facility; failed to develop and implement an appropriate care plan to address the individual's risk for abuse and specifically, sexual abuse; failed to assess the individual on whether he had the decision-making capacity to give consent to sexual activity; failed to provide services that supported an individual's right to sexual health and healthy sexual practices; failed to provide appropriate monitoring, assistance and/or supervision of the resident/consumer; failed to monitor the resident/consumer condition and the perpetrator of abuse's condition; failed to adequately monitor and supervise a resident/consumer with limited IQ and inability to consent; failed to prevent the resident/consumer from sexual abuse by another resident/consumer on multiple occasions; failed to implement appropriate interventions to minimize the potential for continued sexual abuse; failed to notify the guardians immediately regarding the August 13, 2022 sexual abuse; failed to report and notify the various public agencies and police department regarding the incident of sexual abuse; and failed to ensure all necessary precautions be taken to assure that the resident's environment remains free of sexual abuse.  Ex. A., ¶¶42, 48 and 55.

The FAC also alleges that TWI failed to ensure the nursing facility was adequately staffed; failed to appropriately hire adequately trained staff; failed to ensure that every individual has the right to be free from abuse, neglect, exploitation, coercion and restraint; failed to evaluate the most suitable therapy and placement of a resident; failed to provide care and supervision based on the known and assessed needs; failed to ensure the facility advocated on behalf of individuals; failed to ensure that the facility assisted individuals to obtain and maintain safety and basic comforts within the CILA; failed to provide services that supports an individual's right to sexual health and be free of sexual exploitation; failed to assess the individual on whether he has the decision-making

capacity to give consent to sexual activity; failed to ensure the policies and procedures of the facility regarding resident care plans were implemented by the staff.  Ex. A., ¶34.

**B.    Selective's Complaint for Declaratory Judgment and the TWI Defendants' Answer to Selective's DJ Complaint**

On or about August 30, 2024, Selective filed its Complaint for Declaratory Judgment (the "Selective DJ Complaint"). A true and correct copy of the Selective DJ Complaint is attached hereto as **Exhibit B**. On November 14, 2024, the TWI Defendants filed their answer to the Selective DJ Complaint (the "TWI Defendants' Answer"). A true and correct copy of the TWI Defendants' Answer is attached hereto as **Exhibit C**.

In the Selective DJ Complaint, Selective alleges the factual allegations of the FAC and the TWI Defendants admit said factual allegations and further state that the FAC speaks for itself. Ex. B and C., ¶¶12-18. The Selective DJ Complaint also alleges that Selective issued Commercial Lines Policy No. S 2414607 to Defendant TWI for the policy periods of October 6, 2019 to October 6, 2020 and again from October 6, 2021 to October 6, 2022 (the "Policy"), true and correct copies of which are attached hereto as **Exhibit D** and **Exhibit E**. The TWI Defendants admit this allegation in their Answer. Ex. B and C., ¶19.

**C.    The Policy**

The Policy includes Commercial General Liability Coverage, Social Services Professional Liability Coverage, Abuse or Molestation Coverage and Umbrella Coverage.[1]  The Commercial General Liability Coverage Part of the Policy contains the following insuring agreement under form CG 00 01 (04/13):

**SECTION I — COVERAGES**

---

[1] The Policy also includes Automobile Coverage and Inland Marine Coverage that are not relevant to this Motion.

11397258.2

## COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

        **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or per-form acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

The Commercial General Liability Coverage Part of the Policy contains the following insuring agreement under form CG 001 (04/13):

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

The Commercial General Liability Coverage Part of the Policy contains the following relevant definitions:

**SECTION V – DEFINITIONS**

**3.**      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**13.**      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**      "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.**      False arrest, detention or imprisonment;

   **b.**      Malicious prosecution;

   **c.**      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.**      Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.**      The use of another's advertising idea in your "advertisement"; or

   **g.**      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

The Policy contains the following Sexual Abuse/Molestation Liability Coverage Exclusion

as per endorsement CG 9029 (06/10):

**ABUSE OR MOLESTATION LIABILITY COVERAGE EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

   **A.**      The following exclusion is added to **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions:**

   "Bodily injury" or "property damage" arising from or related to:

11397258.2

(1)    Each, every and all actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or by two or more persons acting together, including physical or mental abuse arising from or related to such conduct; or

(2)    The insured's:

    (a)    Hiring;

    (b)    Training;

    (c)    Investigation;

    (d)    Supervision;

    (e)    Reporting to the proper authorities, or failure to so report; or

    (f)    Retention;

    of any "employee", volunteer, student-in-training or any other person or persons who commit or allegedly commit acts of physical or mental abuse of a sexual nature, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct, and for whom the insured is or ever was legally responsible; or

(3)    The insured's:

    (a)    Design;

    (b)    Control;

    (c)    Maintenance;

    (d)    Supervision;

    (e)    Inspection; or

    (f)    Investigation of prospective tenants

    of your premises, premises in your control or premises you have leased to another where such activities actually or allegedly resulted in any act of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical

7

or mental abuse arising from or related to such conduct; or

**(4)** The insured's failure to provide professional services to or neglect of the therapeutic needs of a client, patient or other person arising from any physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct; or

**(5)** The insured's liability for physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct, by any "employee", volunteer, student-in-training or any other person or persons acting within the scope of their employment, appointment or authorization by the insured.

The Policy's Social Services Liability Coverage Section provides the following relevant Sexual Abuse or Molestation Liability Coverage Exclusions as per endorsement SS 0049IL (10/14):

This endorsement modifies insurance provided under the following:

SOCIAL SERVICE ORGANIZATION PROFESSIONAL LIABILITY COVERAGE FORM

The following Exclusion is added to **SECTION I — COVERAGES,** Paragraph **2. Exclusions:**

**y.** Directly or indirectly arising from or related to:

**(1)** Each, every and all actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or by two or more persons acting together, including physical or mental abuse arising from or related to such conduct; or

**(2)** The insured's:

**(a)** Hiring;

**(b)** Training;

**(c)** Investigation;

  **(d)** Supervision;

  **(e)** Reporting to the proper authorities, or failure to so report; or

  **(f)** Retention;

    of any "employee", volunteer, student in training or any other person or persons who commit or allegedly commit acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct, and for whom the insured is or ever was legally responsible; or

 **3)** The insured's:

  **(a)** Design;

  **(b)** Control;

  **(c)** Maintenance;

  **(d)** Supervision;

  **(e)** Inspection; or

  **(f)** Investigation

    of prospective tenants of your premises, premises in your control or premises you have leased to another where such activities actually or allegedly resulted in any act of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct; or

 **(4)** The insured's failure to provide professional services to or neglect of the therapeutic needs of a client, patient or other person arising from any physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct.

All other terms and conditions of the coverage part remain unchanged.

11397258.2

The Policy's Abuse and Molestation Liability Coverage Part, endorsement AM 0001IL
(06/10) provides as follows:

**SECTION I — COVERAGE**

**ABUSE OR MOLESTATION LIABILITY COVERAGE**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured is legally obligated to pay as "damages" because of "abuse or molestation" resulting in "injury" to which this insurance applies, if the insured is obligated to pay such "damages" by reason of:

        **(1)**     The insured's:

            **(a)**     Hiring;

            **(b)**     Training;

            **(c)**     Investigation;

            **(d)**     Supervision;

            **(e)**     Reporting "abuse or molestation" to the proper authorities, or failure to so report; or

            **(f)**     Retention

        of any "employee", volunteer, student in training or any other person or persons for whom the insured is or ever was legally responsible; or

        **(2)**     The insured's:

            **(a)**     Design;

            **(b)**     Control;

            **(c)**     Maintenance;

            **(d)**     Supervision;

            **(e)**     Inspection; or

            **(f)**     Investigation

of prospective tenants of your premises, premises in your control or premises you have leased to another; or

**(3)** The insured's failure to provide professional services or neglect of therapeutic needs arising from "abuse or molestation" for which coverage applies under Item **1.a.(1)** or Item **1.a.(2)** of this insuring agreement; or

**(4)** The insured's liability for any "employee", volunteer, student in training or any other person or persons acting within the scope of their employment, appointment or authorization by you.

We have the right and duty to defend any "suit" seeking "damages" to which this insurance applies. However, we have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any "abuse or molestation" and settle any claim or "suit" that may result. But:

**(a)** The amount we will pay for "damages" is limited as set forth in **SECTION III — LIMIT OF INSURANCE;** and

**(b)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of "damages."

We will pay, with respect to any "suit" we defend, those "defense costs" incurred with our consent. No other obligation or liability to pay sums or perform acts or services is covered by this coverage part.

Our obligation to pay for "damages" applies only to the amount of "damages" in excess of any deductible amount shown in the Declarations. The deductible applies separately to each "abuse or molestation." Upon our request you will reimburse us for any amounts that we have paid that are within the applicable deductible.

**b.** This insurance applies only if:

**(1)** The "abuse or molestation" takes place in the "coverage territory"; and

**(2)** The "abuse or molestation" first takes place during the policy period of the policy to which this coverage part is attached.

This Abuse and Molestation Liability Coverage Part also contains the following Definitions:

11397258.2

**SECTION V — DEFINITIONS.**

3.    "Abuse or molestation" means each, every and all actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or by two or more persons acting together.

Each, every and all actual, threatened or alleged acts of "abuse" or "molestation" or mental abuse, sexual abuse, sexual molestation or sexual misconduct committed, participated in, directed, instigated or knowingly permitted by one person or by two or more persons acting together shall be considered to be one "abuse" or "molestation" regardless of:

a.    The number of injured parties;

b.    The period of time or policy periods over which the acts took place; and

c.    The number of such actual, threatened, or alleged acts.

"Abuse" or "molestation" comprising more than one act of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place at the time of the first such incident, act or encounter.

5.    "Damages" means a monetary:

a.    Judgment;

b.    Award; or

c.    "Agreed settlement" means a settlement and release of liability signed by the insured and the claimant or the claimant's legal representative and approved by us. But it does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damage award.

8.    "Injury" means physical injury to a person, sickness, disease or emotional distress, mental anguish, or death resulting there from.

The Abuse or Molestation Liability Coverage Part contains the following relevant provision:

**SECTION III — LIMIT OF INSURANCE**

12

1.  The limit of insurance shown in the Declarations and the rules below fix the most we will pay for "damages" to which this insurance applies regardless of the number of:

    a.   Insureds;

    b.   Claims made or "suits" brought; or

    c.   Persons or organizations making claims or bringing "suits."

2.  The **EACH "ABUSE" OR "MOLESTATION" LIMIT** shown in the Declarations is the most we will pay for all "damages" as the result of any claim of "abuse" or "molestation."

    Each, every and all actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct committed, participated in, directed, instigated or knowingly permitted by one person or by two or more persons acting together shall be considered to be one "abuse" or "molestation" regardless of:

    a.   The number of injured parties;

    b.   The period of time or policy periods over which the acts took place; and

    c.   The number of such actual, threatened or alleged

3.  The **AGGREGATE LIMIT** shown in the Declarations is, subject to Paragraph **2.** of this Section, the total limit of our liability for all "damages" to which this insurance applies.

    The Aggregate limits of this coverage part apply separately to each consecutive annual period; and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations to which this coverage part is attached; unless the policy period of the policy to which this coverage part is attached is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding annual period for purposes of determining the limit of insurance.

The Umbrella Coverage Part of the Policy contains the following provision:

**SECTION I – COVERAGE**

**A.   Insuring Agreement**

    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as

damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.

## III.    Argument

### A.    Standard for Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Vlasic v. Equifax Credit Info. Servs.*, 2004 U.S. Dist. LEXIS 8361 (N. Dist. Ill. 2004). In ruling on a motion for judgment on the pleadings, the court must accept as true all well-pleaded facts. *Galloway v. West Bend Insurance Co.*, No. 23-cv-50217, 2024 U.S. Dist. LEXIS 212006, at *4 (N.D. Ill. Nov. 21, 2024). In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Forseth v. Village of Sussex*, 199 F.3d 363 (7th Cir. 2000).

### B.    Selective Has No Duty to Defend or Indemnify the TWI Defendants Against Any of the Claims Asserted in the Underlying Action.

In Illinois, an insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 125 (1992); *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). An insurer's duty to defend arises if the complaint alleges

facts that fall within, or potentially within, the policy's coverage. *Wilkin, supra; Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill. 2d 23(1987).

Illinois courts apply the "eight corners test" in determining whether an insurer has a duty to defend. *Geisler v. Everest National Insurance Co.,* 2012 IL App (1st) 103834, ¶70. Under this rule, a court compares the allegations within the four corners of the complaint to the terms within the four corners of the insurance policy to determine whether the facts of the complaint fall within or potentially within the scope of the policy. *Bartkowiak v. Underwriters at Lloyd's*, 2015 IL App (1st) 133549, ¶18.

In the Underlying Action, the Underlying Plaintiffs allege that John Doe first experienced "abuse or molestation" in June of 2019. FAC at ¶¶12, 14. Such allegations clearly fall outside the scope of the CGL Coverage and the Social Security Coverage of the Policy based upon the Abuse and Molestation Exclusions in each of these coverages. The FAC allegations also fall outside the scope of the Abuse and Molestation Coverage of the Policy since the alleged abuse took place before the inception of the Policy. Thus, Selective has no duty to defend or indemnify the TWI Defendants with respect to the Underlying Action.

1.     **There Is No Dispute As To Any Material Facts That There Is No Coverage For The Underlying Action Under The CGL Coverage Of The Policy.**

The FAC asserts a negligence count against each of the TWI Defendants and a violation of individual rights count against TWI. Each of these causes of action pertains to actual, threated or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, and thus, coverage is precluded pursuant to the Abuse and Molestation Liability Exclusion included in the CGL Coverage of the Policy. Specifically, the FAC alleges the TWI Defendants (i) failed to ensure that every individual had the right to be free from abuse, neglect, exploitation, coercion, and restraint; (ii) failed to develop and implement an appropriate care plan to address the

15

individual's risk for abuse and specifically sexual abuse; (iii) failed to assess the individual on whether he had the decision-making capacity to give consent to sexual activity; (iv) failed to provide services that supported an individual's right to sexual health and healthy sexual practices and to be free from sexual exploitation and abuse; (v) failed to appropriately monitor and document the resident's condition and the perpetrator of abuse's condition; (vi) failed to prevent the resident/consumer from sexual abuse by another resident/consumer on multiplate occasions; (vii) failed to adequately monitor and supervise a resident/consumer with limited IQ and the inability to consent; (viii) failed to prevent the resident/consumer from sexual abuse by another resident/consumer for continued sexual abuse; (ix) failed to report and notify the various public agencies and police departments regarding the incidents of sexual abuse; and (x) failed to ensure that all necessary precautions were taken to assure that the resident's environment remains as free from the possibility of sexual abuse. Ex. A., ¶¶42, 48, and 55.

The CGL portion of the Policy contains an Abuse or Molestation Liability Exclusion that precludes coverage for any "bodily injury" "property damage" and "personal and advertising injury" arising from the "actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or by two or more persons acting together, including physical or mental abuse arising from or related to such conduct". In the TWI Defendants' Answer, the TWI Defendants admit that John Doe was sexually abused and molested multiple times while residing at the CILA, specifically in June 2019 and on August 13, 2022. Ex. B and C., ¶¶12, 14-15. Moreover, according to the FAC, on August 19, 2022, John Doe told Underlying Plaintiffs that he was assaulted and/or sexually assaulted by another resident on March/April 2022 and July 2022. Ex. A., ¶17. Accordingly, coverage to the TWI

16

Defendants with respect to the Underlying Action is precluded under the Abuse or Molestation Liability Exclusion included in the CGL portion of the Policy.

            **2.      There Is No Dispute As To Any Material Facts That The Social Service Organization Coverage of the Policy Does Not Apply To The Underlying Action.**

The Policy's Social Service Organization ("SSO") Coverage Form contains an identical Abuse or Molestation Liability Exclusion as provided in the CGL Portion of the Policy. Specifically, the Abuse or Molestation Liability Exclusion precludes coverage under the SSO Coverage Form for (i) the insured's design, control, maintenance, supervision, inspection, or investigation of prospective tenants of insured's premises, premises in the insured's control or premises the insured has leased to another where such activities actually or allegedly resulted in any act of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct; and (ii) the insured's failure to provide professional services to or neglect of the therapeutic needs of a client, patient or other person arising from any physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct, including physical or mental abuse arising from or related to such conduct.

According to the FAC, the TWI Defendants failed to ensure the nursing facility was adequately staffed; failed to appropriately hire adequately trained staff; failed to ensure that every individual has the right to be free from abuse, neglect exploitation, coercion and restraint; failed to evaluate the most suitable therapy and placement of a resident; failed to provide care and supervision based on the known and assessed needs; failed to ensure the facility advocated on behalf of individuals; failed to ensure that the facility assisted individuals to obtain and maintain safety and basic comforts within the CILA; failed to provide services that supports an individual's right to sexual health and be free of sexual exploitation; failed to assess the individual on whether he has the decision-making capacity to give consent to sexual activity; failed to ensure the policies

and procedures of the facility regarding resident care plans were implemented by the staff. Ex A., ¶34. In TWI Defendants' Answer, the TWI Defendants admit to these allegations. Ex. B and C., ¶18. Therefore, coverage provided under the SSO Coverage Form of the Policy with respect to the Underlying Action is precluded under the Abuse or Molestation Liability Exclusion included in the SSO Coverage Form.

###    3.    There Is No Dispute As To Any Material Facts That The Abuse Or Molestation Liability Coverage of the Policy Does Not Apply to the Underlying Action.

The Policy's Abuse or Molestation Liability Coverage Insuring Agreement limits coverage to "abuse or molestation" which first takes place during the Policy's policy period. The Abuse or Molestation Liability Coverage defines "abuse or molestation" to mean "each, every and all actual, threatened or alleged acts of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct performed by one person or by two or more persons acting together." Moreover, the Abuse or Molestation Liability Coverage explicitly defines "abuse" or "molestation" comprising of more than one act of physical or mental abuse, sexual abuse, sexual molestation or sexual misconduct to take place at the time of the first such incident, act or encounter.

According to the FAC, in or around June 2019, another CILA resident entered the facility bathroom and penetrated John Doe's anus with his finger. Ex. A., ¶12. The Selective DJ Complaint alleges this factual allegation of the FAC, and the TWI Defendants admit in their Answer to the Selective DJ that the FAC contains these allegations. Ex. B and C., ¶12. As such, it is undisputed that the FAC alleges that John Doe first experienced "abuse or molestation" in June of 2019. Moreover, there is no dispute that the Policy has a policy period from October 6, 2019 to October 6, 2020 and again from October 6, 2021 to October 6, 2022. Ex. B and C., ¶19. Therefore, pursuant to the definition of "abuse or molestation" included in the Molestation or Abuse Coverage part,

18

11397258.2

the sexual abuse, sexual molestation or sexual misconduct alleged in the FAC is deemed to have taken place on June 2019, before the Policy's policy period. The Policy's Abuse or Molestation Coverage part explicitly limits coverage to "abuse or molestation" that first takes place during the policy period of the Policy.

Furthermore, it is undisputed that the FAC alleges that John Doe did not give consent to any of the acts alleged in the FAC or was incapable of giving consent to any of the acts alleged in the FAC. Specifically, the FAC alleges that at no time did John Doe have the decisional making capacity to give consent to sexual activity with another individual at the CILA, or alternatively, at no time did John Doe give consent to the sexual activity alleged. Ex. A., ¶¶28, 29. The Selective DJ Complaint alleges these factual allegations of the FAC, and the TWI Defendants admitted to the same. Ex. B and C., ¶18. Thus, John Doe's June 2019 sexual encounter with Fritz constitutes "abuse or molestation" within the terms of the Policy. As such, the Policy's Abuse or Molestation Coverage part does not provide coverage to the TWI Defendants with respect to the Underlying Action because the "abuse or molestation" alleged in the FAC occurred before the Policy's policy period.

**E.    There Is No Dispute As To Any Material Facts That Policy's Umbrella Coverage Does Not Provide Coverage For The Underlying Action.**

According to the Umbrella Coverage portion of the Policy, Selective has no duty to defend the TWI Defendants against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.  Because the primary coverages of the Policy, including the Commercial General Liability, Social Services Professional Liability and the Abuse or Molestation Coverage Parts do not apply, the Umbrella Coverage Part of the Policy does not provide coverage for the Underlying Action.

## IV. <u>Conclusion</u>

For the reasons stated above, Selective Insurance Company of America respectfully requests that this Court enter an order declaring that Selective has no duty to defend or indemnify Defendants Transitions of Western Illinois, Inc. ("TWI"), Lacey Eaton ("Eaton"), and Eric Kaminsky ("Kaminsky") with respect to the Underlying Action under the Selective Policy and for such other relief as this Court deems necessary.

Dated:  January 30, 2025

Respectfully submitted,

CLAUSEN MILLER, P.C.
By:  *Colleen A. Beverly*
Colleen A. Beverly (#6269463)
Clausen Miller P.C.
10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
P: 312.855.1010 F: 312.606.7777
cbeverly@clausen.com

**Attorney for Plaintiff**
**Selective Insurance Company of America**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing Motion for Judgment on the Pleadings submitted by Selective Insurance Company of America complies with the type-volume limitation of Local Rule 7.1(B)(4) because this Memorandum contains 5,569 words, inclusive of headings, footnotes, and quotations.

Dated:  January 30, 2025                                 Respectfully submitted,

                                                         CLAUSEN MILLER, P.C.
                                                By:   *Colleen A. Beverly*
                                                         Colleen A. Beverly (#6269463)
                                                         Clausen Miller P.C.
                                                         10 South LaSalle Street, Suite 1600
                                                         Chicago, Illinois 60603
                                                         P: 312.855.1010 F: 312.606.7777
                                                         cbeverly@clausen.com

                                                         **Attorney for Plaintiff**
                                                         **Selective Insurance Company of America**

21